UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEHRNOUSH GHOBADI PASHI,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE, *et al.*,<br><br>Defendants. | Civil Action No. 23-1546<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Mehrnoush Ghobadi Pasha, a citizen of Iran who "invested $500,000 into an approved 'Regional Center,'" Pet. for Writ of Mandamus ("Pet") at 1, ECF No. 1, brought this suit against defendants, the U.S. Department of State, Secretary of State Antony J. Blinken, the U.S. Consul General in Naples, Italy, Tracy Roberts-Pounds, and the Attorney General of the United States, Merrick B. Garland, seeking a writ of mandamus to compel the U.S. Department of State to adjudicate her visa application, *id.* at 2, on claims that defendants have unreasonably delayed her visa application, in violation of the Administrative Procedure Act ("APA") and the Mandamus Act, *id.* at 4–6. Defendants now move to dismiss the petition as moot because plaintiff's visa had already been issued or, in the alternative, to dismiss under Federal Rule of Civil Procedure 12(b)(6) because the petition "names defendants who have no role in connection with the adjudication of [plaintiff's] visa application." Defs.' Mot. to Dismiss ("Defs.' Mot.") at 1, ECF No. 5. For the reasons set forth below, this petition must be dismissed as moot.

I.   **BACKGROUND**

Following a brief review of the statutory and regulatory background, the factual history underlying the claims and procedural history of this case are summarized below.

### A. Statutory and Regulatory Background

#### 1. *EB-5 Classification Generally*

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the issuance of visas to different categories of immigrants, including, under the so-called "EB-5" program, to immigrants who contribute to "employment creation" by investing in new commercial enterprises that create full-time jobs for American workers, *see* Immigration Act of 1990, Pub. L. No. 101-649, § 121(a), 104 Stat. 4978, 4989 (Nov. 29, 1990) (codified at 8 U.S.C. § 1153(b)(5)); *see* 8 C.F.R. § 204.6 (2020) (defining the requirements and process for EB-5 "alien entrepreneur" classification).  To qualify for a visa under the EB-5 program, an immigrant must "create[e] full-time employment for not fewer than 10 United States citizens . . . or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters)." 8 U.S.C. § 1153(b)(5)(A)(ii).  Under the regulations in effect at the time of adjudication of plaintiff's I-526 application, the immigrant must have made or be in the process of making an investment of at least $1,000,000 generally or at least $500,000 into a "targeted employment area," 8 U.S.C. § 1153(b)(5)(C).[1]

A "targeted employment area" is defined as "a rural area or an area designated by the Secretary of Homeland Security . . . as a high unemployment area," *id.* § 1153(b)(5)(D)(viii). USCIS permits certain so-called "economic units" to apply for categorization as a "targeted

---

[1] In 2019, then-Acting Homeland Security Secretary McAleenan signed a Final Rule that increased the threshold amounts required for EB-5 investments from $1,000,000 to $1,800,000 generally and from $500,000 to $900,000 for targeted employment areas.  *See* Final Rule, *EB-5 Immigrant Investor Program Modernization*, 84 Fed. Reg. 35,750, 35,808 (Jul. 24, 2019).  This Final Rule was vacated in June 2021, *see Behring Reg'l Ctr. LLC v. Wolf*, 544 F. Supp. 3d 937 (N.D. Cal. 2021), and USCIS has since "appl[ied] the EB-5 regulations that were in effect before the rule was finalized," *EB-5 Immigrant Investor Program*, U.S. Citizenship and Immigration Servs., https://www.uscis.gov/working-in-the-united-states/permanent-workers/eb-5-immigrant-investor-program (last visited Feb. 21, 2024).  In any event, Plaintiff's I-526 application was adjudicated under the threshold amounts in place prior to this change.

employment area" and designation as a "regional center" through the Immigrant Investor Pilot Program. *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1993 ("Appropriations Act"), Pub. L. No. 102-395, § 610(a), 106 Stat. 1828, 1874 (Oct. 6, 1992); 8 C.F.R. § 204.6(e), (m).  To qualify for designation as a "regional center," an economic unit must "promot[e] . . . economic growth," *id.* § 204.6(e); *see* Appropriations Act § 610(a), and the proposal for such designation must explain, *inter alia*, how the economic unit focuses on a geographic region of the United States and will promote economic growth through "increased export sales, improved regional productivity, job creation, and increased domestic capital investment," 8 C.F.R. § 204.6(m)(3)(i).  Upon designation as a regional center, a foreign investor may then invest in the center to satisfy, with the requisite threshold amount of funds, the EB-5 employment-creation requirement by creating jobs indirectly.  *Id.* §§ 204.6(j)(4)(iii), 204.6(m)(7)(ii).

        2.  *EB-5 Visa Processing Procedure*

Foreign investors seeking EB-5 visas must first file a petition with USCIS, using Form I-526, to petition for classification as an EB-5 investor.  *See* 8 C.F.R. §§ 204.6(a), (c).  The burden of proof rests on petitioners to establish, by a preponderance of the evidence, that they are "eligible to receive [the] visa" for which they are petitioning.  8 U.S.C. § 1361; *see Matter of Chawathe*, 25 I. & N. Dec. 369, 375–76 (2010).  USCIS adjudicates I-526 petitions based on the totality of the evidence presented.  *See id.* at 375–76.  "Once the petition is processed and [if] a visa becomes available—which may take years—the immigrant advances to 'conditional' lawful permanent resident status." *Mirror Lake Vill. LLC v. Wolf*, 971 F.3d 373, 375 (D.C. Cir. 2020) (citing 8 U.S.C. § 1186b(a)).  Successful adjudication and approval of an I-526 petition makes a petitioner eligible for a visa, but does not automatically provide a visa.  At the same time,

approved eligibility status permits foreign investors (and their dependent family members) to apply for two-year conditional permanent resident status either from within the United States or overseas from the State Department at the United States consular post in the petitioner's home country.  *See* 8 U.S.C. §§ 1186b(a)(1), 1201(a), 1255(i); 8 C.F.R. § 245.2; 22 C.F.R. §§ 42.32(e), 42.41, 42.42.

After an I-526 petitioner is successfully adjudicated, approved and eligible for a visa, issuance of a visa to the petitioner is then subject to various limits generally applicable to visa availability.  The INA imposes annual limits on the total number of immigrant visas issued each year.  *See* 8 U.S.C. § 1151.  For example, the agency first caps the worldwide level of employment-based immigrants each fiscal year, 8 U.S.C. § 1151(d), then limits the number of employment-based visas that may be granted to individuals from a single country to 7 percent, *see id.* § 1152(a)(2), and further limits the number of EB-5 visas to 7.1 percent of all employment-based visas granted, *see id.* § 1153(b)(5)(A).  Subject to this allotment framework, the State Department "allocate[s] immigrant visa numbers," *see* 22 C.F.R. § 42.51(b), and when the demand for visas is higher than the supply of visas for a given year in any given category, a visa queue forms.  Visa petitions in that queue are organized by their "priority date," typically the date the petition was filed.  *See* 8 U.S.C. § 1153(e); 22 C.F.R. § 42.54.  A petitioner in the queue then becomes eligible for a permanent resident visa, barring any other indications of ineligibility, when the listed priority date for petitioner's country of origin and category printed in the most recent monthly Visa Bulletin, published by the State Department, *see, e.g.*, U.S. Dep't of State, *Visa Bull. for February 2024* 4–5 (Feb. 2024), https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2024/visa-bulletin-for-

february-2024.html (last visited Feb. 21, 2024), falls on a date later than petitioner's priority date, *id.* At that point, a visa is considered available to that petitioner. *See id.*

The agency historically managed pending I-526 petitions on a first-in, first-out ("FIFO") basis until switching, effective March 31, 2020, to a "visa availability" process, which gives "priority to petitions where visas are immediately available, or soon available." *See* U.S. Citizenship and Immigr. Servs., *USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory* (Jan. 29, 2020) ("EB-5 Processing Announcement"), https://www.uscis.gov/news/news-releases/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory (last visited Feb. 21, 2024). Once an I-526 petition is designated for priority, however, USCIS's Immigrant Investor Program Office resumes ordering its adjudicative priority list "in FIFO order." *See* U.S. Citizenship and Immigr. Servs., *Questions and Answers* ("Questions and Answers"), https://www.uscis.gov/working-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach (last visited Feb. 21, 2024).

After a petition is designated for priority and rises to the top of the FIFO list, it may be approved and proceed to the National Visa Center for pre-processing. *See* U.S. Dep't of State, *Immigrant Visa Process*, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition.html (last visited Jan 17, 2024). According to the government, this process is an improvement over the previously used "first-in, first-out" approach and better aligns with congressional intent by allowing petitioners from countries where visas are immediately available to be processed for EB-5 visas allotted by Congress without waiting behind petitioners from oversubscribed countries without visas currently available. *See* Questions and Answers.

### B. Factual Background and Procedural History

Plaintiff, a citizen of Iran, is "the beneficiary of an approved I-526 Petition for Alien Entrepreneur." Pet. ¶ 1. After filing an application for an immigrant visa with the U.S. Consulate in Naples, Italy, on or around December 2020, *id.* ¶ 2, plaintiff's visa was placed into "administrative processing" in March 2022, *id.* ¶ 3.[2] At the time of filing of plaintiff's petition, her visa application "remain[ed] neither approved nor denied." *Id.* ¶ 4.

Defendants filed a motion to dismiss plaintiff's petition under Federal Rule of Civil Procedure 12(b)(1), on the grounds that her petition is moot and there is no outstanding case or controversy to sustain this action. Defs.' Mot. at 1, 4.[3] As described in defendants' motion to dismiss, a consular officer at the Department of State issued plaintiff's visa after the filing of this lawsuit. *See* Defs.' Mot. at 2; *id.*, Att. 2, Decl. of Joseph F. Carilli, Jr. ("Carilli Decl.") ¶ 4, ECF No. 5-2. Plaintiff concedes that the U.S. Consulate in Naples issued visas to her and her son in July 2023, but states that when she and her son attempted to use the visas to travel to the United States on August 4, 2023, they were denied entry. Pl.'s Opp'n to Def. Mot. Dismiss ("Pl.'s Opp'n") at 1–2, ECF No. 6. According to plaintiff, "[w]hen she arrived at the Miami International Airport, [she] was detained, questioned, and harassed for four hours by Customs and Border Protection officers," and that "[e]ventually, she was forced to withdraw her application for admission to the United States." *Id.* Plaintiff further contends that her visa was "cancelled" during this incident, and that she "will have to apply for a new Visa." *Id.* at 2.

---

[2] According to defendants, plaintiff's visa application was initially rejected when she applied before a consular officer on March 2, 2022, rather than placed into administrative processing. Defs.' Reply Mot. Dismiss ("Defs.' Reply") at 2, ECF No. 7.

[3] Defendants also moved for dismissal under Rule (12)(b)(6) as to certain defendants "who have no role in connection with the adjudication of the visa application," Defs.' Mot. at 1, but this ground for dismissal need not be considered given the granting of defendants' motion and dismissal of this entire case under Rule 12(b)(1).

6

In response to plaintiff's new factual representations in her opposition to defendant's motion to dismiss, defendants were directed to submit "a more complete explanation of why plaintiff's visa was 'cancelled' and she was denied entry to the United States on August 4, 2023," in addition to defendants' "position on whether plaintiff should be allowed to amend her complaint given this factual development," and clarification of "what assurance the government can provide that the allegations plaintiff asserts, including the cancellation of her visa and the denial of entry into the United States, are not capable of repetition, yet evading review."  Minute Order (Sept. 26, 2023).  In response to this Court's order, defendants submitted declarations from the Customs and Border Protection ("CBP") Watch Commander at the Miami Field Office, Moises Pacheco, and from an attorney-advisor in the State Department Office of the Assistant Legal Adviser for Consular Affairs, Samuel W. McDonald.  *See* Defs.' Supp. Mem. Supp. Mot. Dismiss (Defs.' Supp."), Att. 1, Decl. of Moises Pacheco ("Pacheco Decl."), ECF No. 9-1; *id.*, Att. 2, Decl. of Samuel W. McDonald ("McDonald Decl."), ECF No. 9-2.

Commander Pacheco explains that plaintiff's visa was cancelled by CBP as she was undergoing the statutorily required inspection upon her arrival at the Miami International Airport.  Pacheco Decl. ¶ 4–6, 10–11.[4]  After plaintiff was referred to "secondary inspection" upon arrival and initial inspection at the Miami airport, "the inspecting CBP Officer determined that the Plaintiff was likely to be inadmissible to the United States and Plaintiff was informed as such by the CBP Officer."  *Id.* ¶ 6.  At that time, the CBP officer allowed plaintiff the opportunity to withdraw her application for admission to the United States.  *Id.* ¶ 7.  Commander Pacheco's declaration states that plaintiff then chose to withdraw her application for admission to

---

[4]   All non-citizens arriving in the United States are required to undergo inspection by immigration officers prior to entering the United States.  8 U.S.C. § 1225.

the United States, and the inspecting CBP officer cancelled her visa, which was "reflected by the handwritten lines made by the CBP inspecting officer on the visa." *Id.* ¶ 9–10.

Plaintiff's response to the defendants' supplemental submission to this Court again objects to dismissal of her petition, and includes a declaration describing her account of what transpired when she arrived at the Miami International Airport with her son on August 4, 2023. *See generally* Pl.'s Opp'n to Defs.' Supp. Mem. ("Pl.'s Supp."), ECF No. 11.[5]  Plaintiff describes that she was questioned "for about 8 hours, encompassing various aspects such as our immigration history, my husband's military service, and the circumstances surrounding our visa issuance." *Id.* at 2.  During this questioning, the CBP officer "asserted that the visa in [her] passport was invalid," and warned that she "may face imprisonment or acquire a criminal record for attempting to enter with an invalid visa." *Id*.  Plaintiff describes that another CBP officer later advised her that her and her son's visas were "fake and invalid," and that she should "return to Italy on the earliest available flight, which was scheduled for the following evening." *Id.*

Plaintiff asserts that during this whole ordeal, "CBP officers refused to provide my 5-year-old son with blankets, leaving us confined in a freezing room for over 8-hours," and that officers "made fun of my name and ridiculed its pronunciation as though I wasn't even there." *Id.*  Plaintiff claims that she did not desire to withdraw her application for admission, but that she was rather "forced to do so after having been subjected to an inhumane set of circumstances, leaving me no choice but to leave but for fear for my own and that of my son's safety and wellbeing." *Id.*

---

[5] Plaintiff's supplemental response notes that she "respectfully request[s] to amend her complaint," Pl.'s Supp. at 3, but given that plaintiff is not proceeding *pro se* and has counsel in this case, the request to amend her petition will not be considered without a motion to amend and amended petition filed in this Court, in accordance with Federal Rule of Civil Procedure 15(a)(2).

After the submission of plaintiff's opposition to the defendants' supplemental memorandum, including plaintiff's declaration describing her experience at the Miami airport, defendants filed a notice explaining that the State Department issued a replacement visa to plaintiff on November 21, 2023. *See* Defs.' Not. at 1, ECF No. 12. In this filing, defendants further assert that, if plaintiff is to again attempt to enter the United States, "speculation about the outcome of that distinct inspection process by a non-party to this litigation does not preclude dismissal of this lawsuit on mootness grounds as the State Department has concluded its activities with respect to the allegations in the Complaint." *Id.* at 2.

## II.  LEGAL STANDARD

While the "initial burden of proving mootness lies with the party claiming it," *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019) (citing *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010)), the Court must "address the issue [of mootness] *sua sponte* because [it] goes to the jurisdiction of this [C]ourt," *Fund for Animals, Inc. v. United States Bureau of Land Mgmt.*, 460 F.3d 13, 24 (D.C. Cir. 2006) (quoting *Mine Reclamation Corp. v. FERC*, 30 F.3d 159, 1522 (D.C. Cir. 1994)); *see also Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (finding that a court "must consider" its subject-matter jurisdiction *sua sponte* "at any point in the litigation") (internal quotation marks and citation omitted); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions'" (quoting *United States v. Alaska S. S. Co.*, 253 U.S. 113, 116 (1920))).

As the Supreme Court has explained "Article III of the Constitution limits federal subject matter jurisdiction to 'cases'" and 'controversies,'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) (quoting U.S. CONST. art. III. §2), a requirement interpreted "to demand that

9

'an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed,'" *id*. (quoting *Arizonans for Official English* v. *Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser* v. *Newkirk*, 422 U.S. 395, 401 (1975))). "[A] case becomes moot when the issues presented are no longer live' or the parties lack a legally cognizable interest in the outcome." *Porzecanski v. Azar*, 943 F.3d 472, 479 (D.C. Cir. 2019) (quoting *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013)). "[A] case is moot if intervening events make it impossible to grant any effectual relief or if a party has already obtained all the relief that it has sought." *Id.* (internal quotation marks and citations omitted). Thus, "the mootness doctrine prohibits [courts] from deciding a case if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *J.T. v. D.C.*, 983 F.3d 516, 522 (D.C. Cir. 2020) (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (internal quotation marks omitted)).

## III. DISCUSSION

Defendants move to dismiss, under Federal Rule of Civil Procedure 12(b)(1), arguing that in light of the issuance of plaintiff's visa, the case should be dismissed as moot. *See generally* Defs.' Mot.; Defs.' Supp. For the reasons outlined below, the Court agrees that this action is now moot.

Defendants contend that this case should be dismissed as moot because at the time of filing, the only issue in plaintiff's case was "whether a consular officer had unreasonably delayed the re-adjudication of Plaintiff's visa application," and that "there is no longer any live case or controversy" because plaintiff's visa has been issued. Defs.' Mot. at 4. Plaintiff counters that her case is not moot because of both the voluntary cessation doctrine and her assertions that

defendants' conduct—of unreasonably delaying adjudication of her visa application—is capable of repetition, yet evading review. Pl.'s Opp'n at 2–4.

Defendants are correct that plaintiff's claim of unreasonable delay is now moot. Plaintiff's cause of action alleges that the "U.S. Consulate in Naples has simply refused to adjudicate [her] immigrant Visa application," and that the "failure of the U.S. Consulate in Naples to make a final determination on [her] immigrant Visa application is arbitrary, capricious, and not in accordance with federal law." Pet. ¶ 13–14. The limited scope of plaintiff's claim is confirmed by the scope of the predominant relief she seeks, namely: to compel "the U.S. Embassy in Naples to adjudicate [her] immigrant Visa application within a reasonable time." Pet. at 6. By issuing her visa not once, but now twice, defendants have afforded plaintiff all the relief she demanded in her petition for a writ of mandamus. Plaintiff has not moved to amend her petition to add any additional request for relief from this Court, and thus no outstanding controversy has been presented to this Court in this case.

To evade the conclusion that her case is moot, plaintiff first attempts to invoke the voluntary cessation doctrine. Pl.'s Opp'n at 2–4. She argues that, because defendants adjudicated her visa application only after she filed this lawsuit, they "could simply defeat this lawsuit by temporarily ceasing their unlawful behavior," with "nothing to stop them from engaging in the same unlawful behavior once the lawsuit is dismissed." *Id.* at 3. According to plaintiff, a court may only find mootness if the defendants prove that it is "absolutely clear" that the alleged wrongful behavior of arbitrarily delaying her visa application will not recur after the case is dismissed, and plaintiff further argues that defendants have failed to make this showing. *Id.* at 3–4.

Under the voluntary cessation exception to mootness, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued," because it may be "free to return to [its] old ways." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91–92 (2013) (quoting *Deakins v. Monaghan*, 484 U.S. 193, 201 n.4 (1988)).  Instead, "a defendant's voluntary cessation of allegedly unlawful conduct can moot a case only if (i) 'there is no reasonable expectation . . . that the alleged violation will recur,' and (ii) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Aref v. Lynch*, 833 F.3d 242, 251 (D.C. Cir. 2016) (quoting *Am. Bar Ass'n v. Fed. Trade Comm'n*, 636 F.3d 641, 648 (D.C. Cir. 2011)) (alteration in original).  Defendants bear the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 568 U.S. at 91 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000));  see also *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022) (describing the burden of establishing mootness as "heavy" where "[t]he only conceivable basis for a finding of mootness in th[e] case is [the respondent's] voluntary conduct" (quoting *Friends of the Earth*, 528 U.S. at 189)); *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 918 F.3d 151, 157 (D.C. Cir. 2019) (holding that "[i]f a defendant can demonstrate that there is no reasonable expectation that the allegedly unlawful conduct will recur, the claim may be moot").

Although plaintiff's visa has now been issued not once, but twice, her position seems to be that her case is not moot because defendants have a policy or practice of unreasonably delaying adjudication of visa applications, that she may challenge pursuant to *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988).  The D.C. Circuit in *Payne* applied the voluntary cessation doctrine to render a FOIA request not moot, even though the government

provided the documents in dispute, because the plaintiff presented a ripe challenge to the government's practice of delaying the release of documents without justification. *Id.* at 488. The appellate panel held that "even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Id*. at 491 (citing *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90–92 (D.C. Cir. 1986)) (emphases in original).

Assuming, *arguendo*, that plaintiff could assert a "policy or practice" claim in the visa mandamus sphere, plaintiff fails to allege sufficient facts that defendants have a policy or practice of delaying adjudication of visa applications. Plaintiff is "solely complaining about the time it took for her specific visa case to be processed without reference to any unlawful policy or specific allegation of arbitrary conduct by the [State] Department." Defs.' Reply at 2. In fact, as described by defendants, even the delay that plaintiff experienced before the issuance of her first visa was not unreasonable as a matter of law. *Id.* at 3–4; *see Da Costa v. Immigr. Inv'r. Program Office*, 80 F.4th 330, 342 (D.C. Cir. 2023) (holding that a visa processing wait time of four and a half years was not unreasonable given the "serious practical challenges posed by a global pandemic" and "competing demands on the [issuing] agency"). Considering plaintiff's failure to allege an unreasonable policy or practice on behalf of the defendants, and the fact that even the delay in adjudication of her visa specifically does not demonstrate an unreasonable policy or practice in visa adjudication, plaintiff cannot invoke the voluntary cessation doctrine.

Moreover, in light of the fact that plaintiff and her son are now in possession of reissued visas that were fairly promptly and voluntarily reissued by defendants, this record does not support any reasonable expectation that the alleged violation will recur. *See* Defs.' Not. at 1. Put another way, this record does not support a reasonable likelihood that defendants' alleged

13

unlawful conduct of unreasonably delaying consideration of plaintiff's visa application could recur at this time. Consequently, the voluntary cessation doctrine is inapplicable here and does not bar dismissal of this case on mootness grounds.[6]

Plaintiff next argues against dismissal of her case on the basis that defendants' conduct is capable of repetition, yet evading review. This exception to mootness applies where (1) the duration of the action is too short to be "fully litigated prior to cessation or expiration," and (2) "there is a reasonable expectation that the same complaining party will be subject to the same action again." *United States v. Juvenile Male*, 564 U.S. 932, 938 (2011). Here, plaintiff argues that "it seems obvious that Defendants are likely to delay any future Visa application of Ms. Ghobadi," and that without this exception to mootness, her visa applications "would become effectively unreviewable by the courts." Pl.'s Opp'n at 5. As an initial matter, these conclusory statements made by plaintiff are wholly unsupported by the factual allegations in her petition and the record in this case.

The exception to mootness for action that is capable of repetition, yet evading review, does not apply in this case. As to the first prong to be considered when evaluating applicability of this doctrine—the duration of the action—the alleged unreasonable delay in adjudicating a visa case is, as described by the defendants, "by definition not of such limited duration as to evade review." *See* Defs.' Reply at 5 (citing *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006)). Indeed, the entire basis of plaintiff's claim is that the period of time that her visa was pending was unreasonably long. This claim makes contradictory plaintiff's assertion now that the alleged

---

[6] Plaintiff argues in her supplemental response that "even if the visa is to be issued again it may be followed by another validity question regarding the visa itself," and that her case should not be dismissed unless defendants "can make assurances as to the issued Visa being honored at a point of entry, or until Plaintiff has been admitted under said Visa." Pl.'s Supp. at 6. Plaintiff has not, however, amended her petition to request any relief corresponding to these arguments she brings against dismissal. Thus, any argument or request from the plaintiff that defendants should be required to ensure that she is granted entry to the United States cannot prevent dismissal of this case, in which the relief she has requested is issuance of her visa.

harm committed by defendants is too limited in duration to be fully litigated. To be sure, the claim brought by plaintiff did not outlive the pendency of this litigation, but that is only because she was *granted the complete relief* that she requested in her petition. The granting of her requested relief does not make plaintiff eligible for the exception to mootness provided by this doctrine, which is instead typically aimed at circumstances in which the alleged harm creates a permanent or irreparable effect after a short period of time and before litigation may be resolved.

Plaintiff also fails to satisfy the second prong for application of this exception to mootness—that there is a reasonable expectation that she will be subject to the same action again. *See United States v. Juvenile Male*, 564 U.S. 932, 938 (2011). As described in the defendant's November 28, 2023, notice to the Court, defendants have already reissued visas to plaintiff and her son. Defs.' Not. at 1. Plaintiff has not offered any reason to believe that she will be subject to the same unlawful conduct alleged in this case—unreasonable delay of a visa adjudication—now that her visa has already been reissued. The exception to mootness for actions that are capable of repetition, yet evading review thus does not apply in this case.

Accordingly, plaintiff's claim of unreasonable delay in the adjudication of her visa application is now moot and her petition must be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, plaintiff's claim of unreasonable agency delay in rendering a final decision on her visa is now moot. Accordingly, the case is dismissed and defendants' motion to dismiss is **GRANTED**. An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: February 21, 2024

_____
**BERYL A. HOWELL**
United States District Judge